FILED

2008 Nov-19  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| Steven M. Repas, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-G-0544-NE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Steven M. Repas, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir.

1983).  To that end this court "must scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence."

<u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant

evidence as a reasonable person would accept as adequate to support a

conclusion."  <u>Bloodsworth</u>, at 1239.

**STATUTORY AND REGULATORY FRAMEWORK**

In order to qualify for disability benefits and to establish his

entitlement for a period of disability, a claimant must be disabled.  The Act defines

disabled as the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C.

§ 416(i).  For the purposes of establishing entitlement to disability benefits,

"physical or mental impairment" is defined as "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.

§ 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Patrick R. Digby, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff able to perform his past relevant work, and accordingly found him not disabled.

### THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929;  Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore, if a claimant testifies to disabling pain and

satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the

ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not

supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

### DISCUSSION

In the present case the plaintiff alleges he is disabled due to vertigo. When asked whether he had been looking for work the plaintiff testified as follows:

> A:    Not really.  I'm so unreliable as far as attendance due to vertigo, I'd be hesitant even to take anything on.  If I miss a couple or three days a month, I can't visualize an employer saying that is a good thing.

Record 361.  He testified that he was able to drive, but that he carried his medicine with him in case he had an attack of vertigo.  He testified that the medication prevents his vertigo "from getting any more severe, but it doesn't alleviate the symptoms that have already appeared."  Record 362.  The ALJ asked the plaintiff if he could perform a job where he had to "sit and stand during the day and make

change for people at a gas station or a parking lot, or something like that...."

Record 365.  The plaintiff responded as follows:

> A:   On a semi–regular basis.  Again, the, the vertigo is so
> unpredictable, and as far as onset length, the end point of it that
> it – I don't know that my attendance would be good enough to
> have somebody rely on me to do a regular shift or schedule.
> There's – sometimes it hits me when I first get out of bed in the
> morning, sometimes later in the afternoon.  It's just no rhyme
> or reason to the onset or the duration.

Record 365-366.  The plaintiff's attorney questioned him about the frequency of

his vertigo episodes:

> Q:   Looking in your medical records, it says you have about one to
> two episodes a month?
>
> A:   That's the average, yeah.
>
> Q:   I noticed one place in there they affect you from several hours
> to a couple or three days?
>
> A:   It can be that – the longest that I can recall off the top of my
> head has been 72 hours.

Record 366.

At the hearing the vocational expert was asked about the vocational

impact of missing more than one day a month.  She testified that "someone at a

professional job, such as [a] counselor job, can miss up to two days a month."

Record 374.  She was asked whether "two days would be the maximum," and she

responded that normally it was.  Record 374. The plaintiff testified that he had

about one or two episodes of vertigo per month, and that the cause of those

attacks, he would miss two to three days of work per month.  Therefore, unless the

plaintiff's testimony about the frequency and duration of his vertigo attacks was

properly discredited, he is unable to work based upon the testimony of the

vocational expert.

       The ALJ found that vertigo was one of the plaintiff's "severe

combination of impairments."  Record 26.  These impairments included:

"peripheral arterial disease status post bilateral iliac balloon angioplasties with

stenting (May 2006), coronary artery disease, vertigo, a depressive disorder not

otherwise specified, and chronic tobacco abuse."  Record 26.  However, the ALJ

found the plaintiff's vertigo was not "of such frequency, severity and/or duration

as to be disabling."  Record 32.  The ALJ summarized some of the plaintiff's

treatment records for vertigo that he believed showed the plaintiff's vertigo was

not disabling.  Included in that summary was the following:

> The claimant reported continued intermittent vertigo to his primary
> care physician on April 20, 2005.  However, the claimant also
> reported his symptoms were alleviated by the use of Antivert.  On
> July 19, 2005 the claimant reported occasional vertigo symptoms are
> relieved within a day or two with Antivert.  The evidence of record
> does not indicate the claimant sought additional treatment related to
> vertigo until June 21, 2006 when he presented to a local hospital
> emergency room with complaints of nausea and vomiting.  The
> claimant was treated with Antivert and released (Exhibit 19F).
> Therefore, the undersigned finds the claimant's symptoms related to

vertigo are intermittent in nature and alleviated with use of
medication, consistent with the claimant's reports (Exhibit 19F).

Record 33.  Based upon this reasoning, the ALJ concluded the plaintiff "would

miss one to two days of work monthly due to vertigo."  Record 30.

            Contrary to the ALJ's assertion, the plaintiff did seek treatment for

his vertigo between July 19, 2005, and June 21, 2006.  On August 9, 2005, the

plaintiff's wife requested his primary care physician to refer him to an ENT.

Record 233.  He was seen by an ENT, Dr. Frankel, on August 11, 2005.  The

treatment note indicates the plaintiff complained of vertigo for the past two and

half years.  Record 201.  The plaintiff reported that he had had several vertigo

episodes lately.  Record 201.  He reported that he had 10 to 12 episodes in the past

year.  Record 201.  The plaintiff reported the episodes sometimes lasted four hours

and occasionally four days.  Record 201.  The plaintiff reported that meclizine

helped some "but doesn't shorten length of spell."  Record 201.  Dr. Frankel

conducted ENG testing, which showed the following:  "Failure of fixation

suppression on ENG consistent with central pathology."  Record 199.  The

treatment plan states as follows:

> Patient is counseled.  Does not desire a long-term management and
> only would like to take medications p.r.n.  Patient given prescriptions

for Medent LD.[1]  We'll see if works better than meclizine when [he]
gets an episode.  Follow-up p.r.n.

Record 199.  Therefore, it is not surprising that the plaintiff did not seek additional

treatment for his vertigo during the interim between August 11, 2005, and June 21,

2006.  He had been evaluated by an ENT, and elected to treat his symptoms of

vertigo as needed.  There is no indication that Dr. Frankel believe this was not an

appropriate treatment plan and there is no indication that any other treatment

would have alleviated the plaintiff's vertigo.

The ALJ cited no medical record or testimony to support his finding

that the plaintiff would only miss one to two days of work per month due to

vertigo.  This finding would seem to rest upon a mistaken interpretation of the

plaintiff's testimony.  While it is true the plaintiff testified that he had on average

one to two episodes of vertigo per month, he also testified that the episodes last

anywhere from four hours up to three to four days.  The ALJ apparently

---

[1]    What is Medent LD (guaifenesin and pseudoephedrine)?  Guaifenesin is an
expectorant. It helps loosen congestion in your chest and throat, making it
easier to cough out through your mouth.  Pseudoephedrine is a decongestant
that shrinks blood vessels in the nasal passages. Dilated blood vessels can
cause nasal congestion (stuffy nose).  The combination of guaifenesin and
pseudoephedrine is used to treat nasal and sinus congestion, and to reduce
chest congestion caused by the common cold, infections, or allergies.
Guaifenesin and pseudoephedrine may also be used for purposes other than
those listed in this medication guide.

http://www.drugs.com/mtm/medent-ld.html.

interpreted the plaintiff's testimony to be that he only suffered from vertigo for one to two days per month.  However that was not the case.  The ALJ articulated no reason for refusing to credit the plaintiff's testimony that vertigo would prevent him from working two to three days per month and the ALJ's finding that the plaintiff would only miss one to two days per month due to vertigo is not supported by substantial evidence in the record.   Therefore, under the Eleventh Circuit's pain standard, the plaintiff's testimony must be accepted as true.  Accordingly, based upon the testimony of the vocational expert, the plaintiff is unable to work because he would miss more than an average of two days per month due to his vertigo.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

DONE and ORDERED 19 November 2008.


_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.


12